UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

WILBERT K.A. TURNER,

        Plaintiff,

    -v-                             No. 18-CV-1973-LTS-GWG

AGENT JEREMY DELLAPIA, et al.,

        Defendants,

------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Wilbert K.A. Turner ("Mr. Turner" or "Plaintiff"), proceeding pro se, brings this action against special agents Jeremy Dellapia and George Gjelaj of the Federal Bureau of Investigation ("FBI") (the "Federal Defendants"), as well as Christopher Kelly, Erin Moore, and Mark Carey of the Westchester Country police department (the "County Defendants," and with the Federal Defendants, "Defendants"), pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff alleges that Defendants violated his federal constitutional rights in connection with a warrantless search of his apartment in the Bronx, New York, on August 23, 2017. The Federal Defendants (Docket Entry No. 58) and County Defendants (Docket Entry No. 68) each move to

---

[1]     Plaintiff also initially named as defendants the United States Department of Justice ("DOJ"), four officers from the Stamford, Connecticut police department, and Eman Grant. On April 11, 2018, the Court dismissed Plaintiff's claims against the DOJ, without prejudice to refiling or amending after Plaintiff exhausts his administrative remedies under the Federal Tort Claims Act. (Docket Entry No. 8 at 2-3.) On February 25, 2020, at Plaintiff's request, the Court dismissed his claims against the four officers from the Stamford, Connecticut police department. (Docket Entry No. 85.) There is no indication in the record of Plaintiff having served defendant Eman Grant with process. (Docket Entry Nos. 16, 85.)

dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  The Court

has considered the parties' submissions carefully and, for the following reasons, both motions

are granted in part and denied in part.

<u>BACKGROUND</u>

The following summary of relevant facts is drawn from the Plaintiff's complaint

in this action (Docket Entry No. 2, "Compl.") and amended complaint in Case No. 19-CV-6529

(LTS) (GWG) (Docket Entry No. 11 in that action, "Am. Compl.),[2] the well-pleaded factual

contents of which are taken as true for purposes of this motion practice, and Plaintiff's response

in opposition to the Federal Defendants' motion to dismiss.  (Plaintiff's Motion Opposing

Dismissal ("Pl. Opp."), Docket Entry No. 63.)[3]

Around midday on August 23, 2017, Plaintiff left his apartment at 3550 Birona

Ave. for a doctor's appointment.  (Compl. at ECF page 4.)  Upon reaching his car, Plaintiff was

arrested by agent Dellapia, who had a federal warrant for Plaintiff's arrest, but no warrant for a

search of Plaintiff's apartment.  (<u>Id.</u>)  Agent Dellapia took Plaintiff's keys and requested

permission to search his apartment.  (<u>Id.</u>)  Plaintiff denied that request.  (<u>Id.</u>)

---

[2]     On October 28, 2019, the Court consolidated Case No. 19-CV-6529 (LTS) (GWG) with
this case for all purposes.  (Docket Entry No. 64.)  Because Plaintiff's Complaint in this
action (which relates primarily to the Federal Defendants) and his Amended Complaint in
that action (which relates primarily to the County Defendants) were filed before
consolidation, and therefore remain operative, the Court draws on both pleadings.

[3]     In deciding Defendants' motions to dismiss this <u>pro se</u> complaint, it is appropriate for the
Court to take into account the factual allegations contained in Plaintiff's response papers.
<u>See</u> <u>Walker v. Schult</u>, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing <u>Gill v. Mooney</u>, 824
F.2d 192, 195 (2d Cir. 1987)) ("A district court deciding a motion to dismiss may
consider factual allegations made by a <u>pro se</u> party in his papers opposing the motion.").

"About 5 to 6 officers," including agent Gjelaj, then went to Plaintiff's three-bedroom apartment on the twelfth floor of 3550 Birona and began using his keys to unlock the door.  (Compl. at ECF pages 4-5, 9; Am. Compl. at 4.)  Before they were able to unlock the door, a woman named Elita Hudson—a friend of Plaintiff's girlfriend, who was visiting the United States from Jamaica with her 10 year old son for approximately five weeks and was staying in a room in Plaintiff's apartment during at least a portion of her stay—locked the deadbolt and asked who was at the door.  (Compl. at ECF pages 4-5, 8; Pl. Opp. at 1-2.)  She then "remove[d]" the deadbolt and the officers entered.  (Compl. at ECF page 5.)  She told the officers she was a visitor from Jamaica, and showed them her passport, visa, and travel itinerary, as well as the room she and her son were staying in, but said that "she could not give them permission to search the apartment."  (Id. at ECF pages 5, 8.)  According to Plaintiff, the officers "tried to confiscate her money" if she did not sign a piece of paper.  (Id.)  Ms. Hudson then left the building.  (Id.)

Plaintiff acknowledges the existence of, and attaches to his pleading a copy of, a "Consent to Search" form dated August 23, 2017, signed by "E. Hudson," authorizing a search of Plaintiff's apartment.  (Compl. at ECF page 7.)  Plaintiff alleges in his Complaint that the signature "may be a forge[ry]" (id. at ECF page 9); alleges in his Amended Complaint that it was indeed a "forged signature" (Am. Compl. at 4); and alleges in his opposition brief that two tenants in his building have provided him "new information" that "the person the agents had signing the consent form did so downstairs to the right of the building by the large garbage dumpster," and was, by implication, not Ms. Hudson.  (Pl. Opp. at 4.)  In a sur-reply letter received by the Court on November 8, 2019 (Docket Entry No. 67), Plaintiff elaborated:

> When agent George Gjelaj opened the apartment door the day of August 23rd 2017, Ms. Hudson told agent Gjelaj she does not live in the

apartment or the country, she showed them her bank statement for her cash, her travel [itinerary], and a passport.  George Gjelaj let her leave the apartment, she did not sign the form.  He told her to wait downstairs, she got in a cab to Staten Island.  Agent George Gjelaj then solicit[ed] a tenant in the building a known drug abuser to sign the consent form.  This was done in the courtyard in the presence of the surveillance camera, and other tenants and NYCHA workers who also recorded it and put it on a social media site.  This signing occurred by the garbage dumpsters not upstairs.

(Id. at 1.)[4]

        "The officers in the Amended Complaint" then "entered [Plaintiff's apartment] without a search warrant" and "assisted" the "previously named agents"—i.e., the Federal Defendants—"in the illegal search."  (Am. Compl. at 4.)[5]  At some point during or shortly after the search, Plaintiff observed agent Dellapia with Plaintiff's brown leather wallet, which, he alleges, had been "left on top of a mini refrigerator in my bedroom which was lock[ed]."  (Compl. at ECF page 8.)  When Plaintiff realized that officers were searching his apartment, he asked agent Dellapia to "lock my doors and give me the keys."  (Id. at ECF page 9; see also Am. Compl. at 5 ("When I realized that the agent and officers [were] searching the apartment I

---

[4]     Plaintiff's letter dated November 8, 2019, is not styled as a sur-reply—though it attaches the Federal Defendants' reply brief and was filed in direct response to it—and was not authorized by the Court.  However, in light of Plaintiff's pro se status, the Court will consider the factual allegations made in the November 8, 2019, letter to the extent they are consistent with and merely elaborate upon the allegations in Plaintiff's pleadings.  See Howell v. 1199 Union, No. 14-CV-0174 (AT) (FM), 2015 WL 273655, at *3 (S.D.N.Y. Jan. 16, 2015) ("the Court considers the factual allegations in Plaintiff's opposition papers—including his surreplies [ ]—to the extent that they are consistent with the complaint's allegations"), aff'd sub nom. Howell v. Vazquez, 643 F. App'x 60 (2d Cir. 2016)); Munoz-Nagel v. Guess, Inc., No. 12-CV-1312 (ER), 2013 WL 1809772, at *1 n.1 (S.D.N.Y. Apr. 30, 2013) ("Although this Court's individual rules require a party to obtain the Court's permission prior to the filing of a surreply . . . in light of Plaintiff's pro se status, the Court will accept this filing and consider it to the extent that it is relevant" and "consistent with the allegations contained in the Amended Complaint.") (citation and internal quotation marks omitted).

[5]     As discussed below, however, Plaintiff concedes that agent Dellapia never went to or entered the apartment.  (See Pl. Opp. at 2.)

begged Dellapia to ask[ ] his colleagues to lock[ ] the door and return the keys.  They chose not
to.").)  "The apartment door was not secured" (Am. Compl. at 4), and when Plaintiff's family
members went to the apartment one week later on August 30, 2017, "all [Plaintiff's] belongings
[were] gone and the apartment was trash[ed] with evidence of someone cooking and eating
Chinese take out order."  (Compl. at ECF page 9.)[6]

In his pleadings, Plaintiff asserts a number of federal constitutional and common
law claims.  (Compl. at ECF page 5 (listing "loss of enjoyment of life; violations of U.S.C.A.
Const. Amend(s) 1, 4, 5, 6, 7, 9, + 14; illegal search + seizure; fraud; 18 U.S.C. § 1001; police
misconduct; infliction of emotional distress; stress, duress, assault + battery; [and] theft").)  He
seeks damages to "replace the missing property" from his apartment, as well as punitive
damages.  (Id.; Am. Compl. at 5.)

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough
facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of
a cause of action; there must be factual content pleaded that "allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

---

[6]     After his arrest on August 23, 2017, Plaintiff was indicted and convicted in this District
of four counts of distribution of controlled substances in violation of 21 U.S.C. §§ 812
and 841, and 18 U.S.C. § 2, arising out of incidents in January and February 2017.  See
United States v. Turner, No. 7:17-CR-549 (KMK) (S.D.N.Y.) (the "Criminal Case").  In
the Criminal Case, Plaintiff filed a successful motion to suppress the evidence seized
during the August 23 warrantless search, as to which Judge Karas concluded—following
an evidentiary hearing involving testimony from Plaintiff, agent Dellapia, and agent
Gjelaj—that the Government had failed to meet its burden to show a constitutional search
based on Ms. Hudson's apparent authority to authorize a search of Plaintiff's apartment.
(See Criminal Case Docket Entry Nos. 37, 47.)

556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Complaints filed by pro se plaintiffs like Mr. Turner are held to "less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).  A pro se complaint "must be construed liberally to raise the strongest arguments it suggests."  Walker, 717 F.3d at 124 (internal quotations and citations omitted).  However, "a pro se complaint must [still] state a plausible claim of relief."  Id. (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)).

Federal Defendants' Motion to Dismiss

The Federal Defendants principally argue that Plaintiff's claims against them must be dismissed because: (1) "Plaintiff fails to allege the personal involvement of Special Agent Dellapia in the search of Plaintiff's apartment"; (2) both agent Dellapia and agent Gjelaj are entitled to qualified immunity; (3) Plaintiff's claims arising from the search of his apartment are precluded by the Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017); and (4) Plaintiff's claims arising from his door being left unlocked at the conclusion of that search are precluded by Abbasi and fail on a number of other grounds.  (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (Docket Entry No. 59, "Fed. Def. Memo.") at 6-20.)

*Personal Involvement of Agent Dellapia*

The Federal Defendants' first argument is that Plaintiff's claims against agent Dellapia must be dismissed due to Plaintiff's failure to allege agent Dellapia's personal participation in the deprivation of Plaintiff's constitutional rights.  (Fed. Def. Memo. at 6-7.)

The Federal Defendants are liable for deprivations of Plaintiff's constitutional rights, "if at all," under <u>Bivens</u> and its progeny, which "recognized causes of action for damages against individual federal officials for certain unlawful conduct." <u>Ochoa v. Bratton</u>, No. 16-CV-2852 (JGK), 2017 WL 5900552, at *6 (S.D.N.Y. Nov. 28, 2017). "A plaintiff bringing a claim under <u>Bivens</u> must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority," and, as relevant here, "that the individual defendant was personally involved in the constitutional violation." <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 496 (2d Cir. 2006). <u>See</u> <u>also</u> <u>Iqbal</u>, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In this case, Plaintiff acknowledges that agent Dellapia did not enter Plaintiff's apartment or otherwise participate in the alleged warrantless search.  (Pl. Opp. at 2 (acknowledging as "true" that he and agent Dellapia "did not leave the arresting location").) Plaintiff also does not allege that agent Dellapia participated in the alleged forgery of the consent form, or in leaving Plaintiff's apartment door unlocked at the conclusion of the search; at most, Plaintiff alleges that the officers who performed the search received Plaintiff's apartment keys from agent Dellapia and that, after the search, agent Dellapia was in possession of Plaintiff's wallet, which had been in a locked bedroom in his apartment.  These facts are insufficient to support an inference that agent Dellapia personally participated in any deprivation of Plaintiff's constitutional rights.[7]  The Court will therefore dismiss Plaintiff's <u>Bivens</u> claims against agent Dellapia.  <u>Sash v. United States</u>, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) ("Similar to a suit

---

[7]     Plaintiff's conclusory assertion that "[w]hen Agent Dellapia took my keys I knew their intention[ ] was to illegally enter the apartment," (Compl. at ECF page 9)," is also insufficient to raise a plausible inference that agent Dellapia participated in any deprivation of Plaintiff's constitutional rights.

brought under 42 U.S.C. § 1983, a <u>Bivens</u> action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation.").[8]

*Qualified Immunity Claims of Agent Gjelaj*

The Federal Defendants next argue that, even if the warrantless search of Plaintiff's apartment amounted to a constitutional violation, agent Gjelaj is entitled to qualified immunity in connection with his participation in that search.  (Fed. Def. Memo. at 16-20.)

Qualified immunity "protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known[.]" <u>Vincent v. Yelich</u>, 718 F.3d 157, 166 (2d Cir. 2013) (citation and internal quotation marks omitted).  A qualified immunity defense is therefore established "if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  <u>Salim v. Proulx</u>, 93 F.3d 86, 89 (2d Cir. 1996). A government official may be entitled to qualified immunity even where that official makes a reasonable mistake of fact, <u>Moore v. Vega</u>, 371 F.3d 110, 117 (2d Cir. 2004) ("[A] mistake while engaging in the performance of an official duty . . . does not deprive a governmental officer of immunity[.]"), such as a reasonable mistake concerning the existence of a warrant, <u>Tyson v. Willauer</u>, No. 3:01-CV-1917 (GLG), 2002 WL 31094899, at *1 (D. Conn. Aug. 12, 2002) (citing <u>Maryland v. Garrison</u>, 480 U.S. 79, 86 (1987)) ("The Supreme Court has held that a mistake in

---

[8]     Even if the Court were to conclude that Plaintiff stated an actionable <u>Bivens</u> claim against agent Dellapia, the Court would still conclude that agent Dellapia was entitled to qualified immunity in light of his non-participation in the allegedly unlawful search.  <u>See</u> <u>Bonilla v. United States</u>, 357 F. App'x 334, 335 (2d Cir. 2009) ("Here, the district court properly granted summary judgment to defendant Anticev on the basis of qualified immunity because it was undisputed that Anticev did not enter or search Bonilla's apartment.").

the execution of a valid search warrant on the wrong premises is not a Fourth Amendment

violation."), or a reasonable mistake concerning the apparent authority of a person consenting to

a search of a premises.  Young v. Suffolk Cty., 922 F. Supp. 2d 368, 393 n.9 (E.D.N.Y. 2013)

(collecting cases finding officers entitled to qualified immunity based on a belief that the person

authorizing a search had apparent authority to do so, "even if that belief was erroneous").

　　　　　In this case, the Federal Defendants argue that agent Gjelaj "is entitled to

qualified immunity on the basis that, even if Ms. Hudson did not have authority to consent to a

search of the apartment, his belief that she did so was a reasonable mistake as to fact."  (Fed.

Def. Memo. at 13.)  However, Plaintiff's claim—construed liberally—is that agent Gjelaj had

someone forge Ms. Hudson's signature, not that he actually relied on her apparent authority to

authorize a search of Plaintiff's apartment.  Such action would violate clearly established law,

and any agent in agent Gjelaj's position would have known that it did.  See, e.g., Powell v.

United States, No. 19-CV-11351 (AKH), 2020 WL 5126392, at *13 (S.D.N.Y. Aug. 31, 2020)

("The rights to be free from warrantless searches and fabricated evidence are, unsurprisingly,

'clearly established.'") (collecting cases).  Even to the extent the Court construed Plaintiff's

pleadings to concede that Ms. Hudson physically signed the consent form, moreover, Plaintiff

has alleged sufficient facts (including that Ms. Hudson initially denied permission to conduct a

search of the apartment, and that the officers threatened to "confiscate her money" if she did not

sign the form) to raise a plausible inference that Ms. Hudson's consent was not voluntary, and

other facts (including that Ms. Hudson shared her travel documents and other evidence of her

status as a short-term guest with the officers and that Plaintiff's bedroom had been locked) to

raise a plausible inference that no reasonable officer would have concluded that she had apparent

authority to authorize a search of Plaintiff's apartment.  On this limited record, and construing

each of these facts liberally in Plaintiff's favor, the Court cannot conclude at this time that agent Gjelaj is entitled to qualified immunity as a matter of law, see Vasquez v. Reilly, No. 15-CV-9528 (KMK), 2017 WL 946306, at *6-7 (S.D.N.Y. Mar. 9, 2017) ("Determinations about whether a third-party had actual or apparent authority to consent to a search are typically made upon a more developed record than that present here. . . . the Court declines to grant Defendants qualified immunity without the benefit of a more developed record."), and the Court will deny the Federal Defendants' motion to the extent it is based on agent Gjelaj's claim of qualified immunity.

### *Abbasi* Preclusion of Plaintiff's Claims Based on Defendants' Warrantless Search

The Federal Defendants next argue that Plaintiff's Fourth Amendment claims based on the alleged warrantless search of his apartment are precluded by the Supreme Court's decision in Abbasi, because, they argue, those claims present a "new Bivens context," and because there are "special factors counselling hesitation" in the extension of Bivens to this context "in the absence of affirmative action by Congress."  (Fed. Def. Memo. at 7-12.)

To determine whether a Bivens remedy is available in a given case, the Court must engage in a two-step inquiry.  First, the Court must determine "whether a case presents a new Bivens context," distinct from the three contexts in which the Supreme Court has recognized a Bivens remedy stemming from a federal defendant's deprivation of a plaintiff's constitutional rights.  Abbasi, 137 S. Ct. at 1859.  Second, "[i]f the context is indeed new, then the Court must discern whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  Prado v. Perez, 451 F. Supp. 3d 306, 314 (S.D.N.Y. 2020) (quoting Abbasi, 137 S. Ct. at 1857).

As Abbasi explained, "[t]he proper test for determining whether a case presents a new <u>Bivens</u> context is as follows":

> If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Abbasi</u>, 137 S. Ct. at 1859-60.

There are only three "previous <u>Bivens</u> cases" of relevance to this inquiry: <u>Davis v. Passman</u>, 442 U.S. 228 (1979), which involved "a former congressional staffer's Fifth Amendment claim of dismissal based on sex"; <u>Carlson v. Green</u>, 446 U.S. 14 (1980), which involved "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment"; and <u>Bivens</u> itself, which involved "an allegedly unconstitutional arrest and search carried out in New York City[.]" <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 741-44 (2020).

In this case, the Court need not look beyond <u>Bivens</u> itself to determine that this case does not present a "new <u>Bivens</u> context," because this case, too, arises from an allegedly unconstitutional search carried out by federal agents in New York City, in violation of the Fourth Amendment. <u>See</u> <u>Prado</u>, 451 F. Supp. 3d at 315 ("Here too, Prado sues for an allegedly unconstitutional arrest and search—one that was even carried out in New York City. . . . Because this case is an allegedly unconstitutional search and seizure carried out by federal law enforcement, Prado's claims do not present a new context for the purposes of his <u>Bivens</u> claim."); <u>Powell v. United States</u>, No. 19-CV-11351 (AKH), 2020 WL 5126392, at *6 (S.D.N.Y.

Aug. 31, 2020) ("In the instant matter, Powell contends that he was unconstitutionally arrested, in his New York City home, by federal officers after the officers conducted an extralegal, warrantless search of the Building's third floor . . . The similarity of <u>Bivens</u> and this dispute is readily apparent[.]").

The Federal Defendants argue that the differences between this case and <u>Bivens</u> are nonetheless "significant," because, "most notably," "Special Agent Gjelaj obtained a signature on a consent to search form from Ms. Hudson—an occupant of the apartment and someone Plaintiff admits was permitted to stay there." (Fed. Def. Memo. at 10.) "Accordingly," they argue, agent Gjelaj was "operating pursuant to an occupant having provided explicit consent to search the apartment"—a different "legal mandate" than the agents in <u>Bivens</u>, where there was "an entirely unjustified entry into Plaintiff's apartment in order to arrest him without a warrant or probable cause[.]" (<u>Id.</u>)

The Federal Defendants' <u>Abbasi</u> argument fails for the same reason as their argument concerning qualified immunity: it ignores Plaintiff's allegations that agent Gjelaj was *not* "operating pursuant to an occupant having provided explicit consent to search the apartment." Instead, Plaintiff alleges that the consent was either forged or coerced, leaving only a warrantless search of his apartment, in violation of the Fourth Amendment—the same context presented in <u>Bivens</u>. Plaintiff's claims arising from the warrantless search of his apartment therefore do not present a "new <u>Bivens</u> context" and—at least at this stage—are not precluded by <u>Abbasi</u>. <u>See</u> <u>Powell</u>, 2020 WL 5126392, at *6 ("Whether officers conduct a search without a warrant or conduct a search in brazen disregard of the scope of a warrant makes no difference here given that [ ] <u>Bivens</u> and later cases have sustained a right to recover for Fourth Amendment search-and-seizure violations in roughly similar cases to <u>Bivens</u> without restricting the right

based on the degree of Fourth Amendment error.").[9]  The Court will therefore deny the Federal

Defendants' motion to the extent it seeks dismissal, under <u>Abbasi</u>, of Plaintiff's claims arising

from the warrantless search of his apartment.

*Failure to Secure Claims*

Next, the Federal Defendants raise five challenges to Plaintiff's constitutional

claims to the extent they are based not on Defendants' warrantless search of Plaintiff's

apartment, but rather on Defendants' alleged failure to lock the door of his apartment after that

search.  They argue that (1) "the Complaint [ ] fails to allege facts that would support a plausible

inference that there was any misconduct by Special Agent Gjelaj or Special Agent Dellapia" in

connection with leaving the door unlocked; (2) "failure to lock the apartment door and the

resulting theft would not amount to a claim under the Fourth Amendment"; (3) Plaintiff fails to

allege that any act by agent Dellapia or agent Gjelaj was the proximate cause of the damage

sustained by Plaintiff as a result of his door being left unlocked; (4) to the extent construed as "a

claim under the under the Fifth Amendment for the unconstitutional deprivation of property

without due process of law," Plaintiff's claim would fail because he does not allege that any of

---

[9]    <u>Rivera v. Samilo</u>, 370 F. Supp. 3d 362 (E.D.N.Y. 2019), relied on by the Federal
Defendants in their discussion of the differences between this case and <u>Bivens</u>, is
distinguishable.  In <u>Rivera</u>, the court found that plaintiff Rivera's claims presented a
"new context" because they differed from the claims at issue in <u>Bivens</u> in two ways: (1)
the "constitutional right" at issue in <u>Bivens</u> "was the plaintiff's privacy right," whereas
Rivera's claim was "not for a violation of his privacy rights, or for a warrantless invasion
of his home and the unreasonable search and seizure of his property," but arose instead
"from the force allegedly applied in making a lawful street arrest"; and (2) the "legal
mandate under which the officer was operating" in <u>Bivens</u> was an arrest of the plaintiff
"in his home without a warrant and without probable cause," whereas Rivera's arrest
"was made upon probable cause after a valid vehicle search conducted with probable
cause." <u>Id.</u> at 369.  This case, which involves a warrantless search of Plaintiff's home in
alleged violation of his Fourth Amendment privacy rights, is substantially more like
<u>Bivens</u> than like <u>Rivera</u>.

his property was taken pursuant to state action, or that any state actor was more than negligent in leaving his door unlocked; and (5) in any event, recognition of Plaintiff's "failure to secure" claim "would certainly amount to an extension of a Bivens remedy in contravention of Abbasi." (Fed. Def. Memo. at 12-16.)

The Court agrees that Plaintiff fails to state a federal constitutional claim based on Defendants' allegedly leaving his door unlocked at the conclusion of the search of his apartment. As the Federal Defendants correctly argue, Plaintiff's constitutional claim would arise, if at all, under the Fifth Amendment's due process clause.[10]  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established [government] procedures and (b) claims based on random, unauthorized acts by [government]

---

[10]     As the Federal Defendants correctly argue (Fed. Def. Memo. at 13-14), the Fourth Amendment's right to privacy does not extend to protection of a person's belongings from theft by a non-governmental third party where a government actor's failure to secure that person's home only indirectly enabled that theft.  United States v. Jacobsen, 466 U.S. 109, 113 (1984) (the Fourth Amendment's protections generally do not extend to searches and seizures "effected by a private individual") (citations omitted).  See also Bonner v. O'Toole, No. 12-CV-981 (MSS), 2015 WL 1586661, at *11 & n.13 (N.D. Ill. Apr. 3, 2015) ("Since there was no state action, Bonner cannot prevail on a Fourth Amendment seizure action under Section 1983. . . . to the extent the theft was a foreseeable consequence of police action, it was a foreseeable result only of the officers' failure to properly secure Bonner's apartment—a failure that occurred after the police had concluded their search, and thus after the unconstitutional [search] had come to an end."); Calv v. Whatcom Cty., No. 07-CV-273 (RSL), 2010 WL 724679, at *3 (W.D. Wash. Feb. 26, 2010) ("[T]he Court cannot discern how a violation of these listed constitutional rights [including plaintiff's Fourth Amendment right to be free from unreasonable seizure] is plausibly supported by plaintiff's allegations that defendants failed to adequately lock plaintiff's residence and that third parties later burglarized and/or vandalized his residence."); Sekerke v. City of Nat'l City, No. 19-CV-1360 (LAB) (MSB), 2020 WL 4435416, at *8 (S.D. Cal. Aug. 3, 2020) (report and recommendation) ("Plaintiff's alleged facts do not demonstrate that Individual Defendants took possession of his [ ] home and its contents or dispossessed him of it.  Instead he alleges that Individual Defendants 'failed to secure his home,' or left it unlocked . . . [T]his Court concludes that Plaintiff has failed to allege facts showing that any officers violated Plaintiff's Fourth Amendment rights by failing to secure his home and the property therein.").

employees." <u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 880 (2d Cir. 1996). "Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." <u>DiBlasio v. Novello</u>, 344 F.3d 292, 302 (2d Cir. 2003). In this case, there is no suggestion in Plaintiff's pleadings that Defendants' act of leaving Plaintiff's door unlocked was anything but "random and unauthorized." "Thus, to state a due process claim against [Defendants], [P]laintiff must show that no post-deprivation procedures were available to him." <u>D'Amario v. United States</u>, 56 F. Supp. 3d 249, 254 (W.D.N.Y. 2014).

Plaintiff has not shown that post-deprivation procedures were unavailable to him. Plaintiff might have pursued a remedy for trespass under the Federal Tort Claims Act ("FTCA") (<u>see</u> Fed. Def. Memo. at 11-12), which authorizes "claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b)(1) (Westlaw through P.L. 116-182). <u>See also</u> <u>Cunningham v. McCluskey</u>, No. 05-CV-10169 (DAB) (KNF), 2011 WL 2791336, at *8 (S.D.N.Y. June 22, 2011) ("Cunningham could have sought damages for the seizure of his property under FTCA, as his claim that the defendants seized his property presents a cognizable cause of action, under New York law, for conversion or trespass to chattels."), <u>report and recommendation adopted,</u> No. 05-CV-10169 (DAB), 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011). Alternatively, in the absence of a cognizable FTCA claim, Plaintiff might have sought redress under 31 U.S.C. section 3724,

which allows the Attorney General to "settle, for not more than $50,000 in any one case, a claim

for personal injury, death, or damage to, or loss of, privately owned property, caused by an

investigative or law enforcement officer . . . who is employed by the Department of Justice

acting within the scope of employment," where that claim is presented to the Attorney General

within one year after it accrues.  31 U.S.C.A. § 3724(a) (Westlaw through P.L. 116-182).  See

D'Amario, 56 F. Supp. 3d at 255 ("As numerous courts have found, the procedure provided by §

3724 is adequate to preclude a Bivens claim for a due process violation.").  See also, e.g., Tyler

v. Jacobsen, No. 7:18-CV-2968 (BHH) (JDA), 2018 WL 6520408, at *1 (D.S.C. Nov. 14, 2018)

(in a case involving allegations that defendants arrested plaintiff in his home and left his home

and shop unlocked, leading to the theft of plaintiff's property by unnamed third parties,

dismissing plaintiff's due process claim where South Carolina law provided post-deprivation

procedures adequate "to secure the return of the property or to compensate for the loss"), report

and recommendation adopted, No. 7:18-CV-2968 (BHH), 2018 WL 6505521 (D.S.C. Dec. 11,

2018).  Furthermore, the existence of these post-deprivation remedies would also counsel the

Court against recognition of a new Bivens action based on Defendants' alleged conduct.  Ochoa,

2017 WL 5900552, at *7 ("[N]ot only does the existence of this alternative remedial scheme

caution against the recognition of a new Bivens action, it also extinguishes the underlying due

process claim."); Jelen v. United States Marshals Serv., No. 18-CV-680 (WHP), 2020 WL

1503566, at *9 (S.D.N.Y. Mar. 30, 2020) ("The availability of the post-deprivation procedures

afforded by § 3724 precludes a Bivens claim.").

       The Court will therefore grant the Federal Defendants' motion to the extent it

seeks dismissal of Plaintiff's separate constitutional claims against them arising out of the

Defendants' alleged failure to secure Plaintiff's apartment door.

*Common Law Claims*

        The Federal Defendants do not separately move to dismiss Plaintiff's common law claims against them.  However,  "the only proper defendant to a tort claim" arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" is the United States, <u>Cannenier v. Skipper-Scott</u>, No. 18-CV-2383 (LGS), 2019 WL 764795, at *3 (S.D.N.Y. Feb. 20, 2019) (quoting 28 U.S.C. § 2679(b)(1) and <u>Skyers v. Sommer</u>, No. 12-CV-3432, 2016 WL 4484241, at *7 (S.D.N.Y. Aug. 23, 2016)), and any such claim must be brought under the FTCA.  Plaintiff does not allege that the Federal Defendants were acting outside the scope of their employment at any point on August 23, 2017.  Moreover, on April 11, 2018, the Court dismissed Plaintiff's FTCA claims, without prejudice, for failure to exhaust his administrative remedies.  (Docket Entry No. 8 at 2-3.)  The Court will therefore dismiss Plaintiff's common law claims against agents Dellapia and Gjelaj, without prejudice to Plaintiff refiling or amending his complaint to assert an FTCA claim against the United States after he has exhausted his administrative remedies.

<u>County Defendants' Motion to Dismiss</u>

        The County Defendants move to dismiss Plaintiff's claims against them "on the grounds that: (1) Plaintiff's 42 U.S.C. section 1983 claims against the County Defendants fail because Plaintiff fails to establish that his constitutional rights were violated; (2) Plaintiff's section 1983 claims fail because he does not establish the requisite personal involvement of the individual County Defendants; (3) the County Defendants are entitled to qualified immunity; and (4) any and all state law claims asserted by Plaintiff fail because he did not file a Notice of

Claim."  (County Defendants Memorandum of Law (Docket Entry No. 70, "County Def. Memo.") at 1.)[11]

*Violation of Plaintiff's Constitutional Rights*

The County Defendants first argue that Plaintiff fails to plausibly allege a violation of his Fourth Amendment rights.  (County Def. Memo. at 4-6.)  For the reasons discussed above, however, the Court concludes that Plaintiff has plausibly alleged that his Fourth Amendment rights were violated by Defendants' warrantless search of his apartment on August 23, 2017.

In further support of their argument that Plaintiff's Fourth Amendment rights were not violated, however, the County Defendants rely on the substance of an affidavit signed by Plaintiff on June 13, 2018, and submitted in his Criminal Case in connection with Plaintiff's successful motion to suppress.  (Declaration of Loren Zeitler (Docket Entry No. 69), Ex. B at ECF pages 14-15 (the "June 13 Affidavit").)  While the Court may consider the existence of such public records when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it may not rely on them to establish the truth of the matters asserted therein.  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").  Though the statements in Plaintiff's June 13 Affidavit may be relevant at a later stage of these proceedings, they do not provide a basis for dismissal of Plaintiff's complaints.

The Court therefore denies the County Defendants' motion to the extent it argues that Plaintiff has failed to state a claim for violation of his constitutional rights.

---

[11]     Plaintiff filed no response to the County Defendants' motion.

*Personal Involvement of County Defendants*

The County Defendants next argue that Plaintiff "has failed to establish the requisite personal involvement of *any* of the County Defendants, as is required to establish liability under Section 1983." (County Def. Memo. at 6-7 (emphasis in original).)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983," as under <u>Bivens</u>, "a plaintiff must show, <u>inter alia</u>, the defendant's personal involvement in the alleged constitutional deprivation." <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013).

In his Amended Complaint, Plaintiff names Christopher Kelly, Erin Moore, and Mark Carey of the Westchester Country police department, together with five members of the Stamford, Connecticut police department, in the case caption, and alleges that "the officers in the Amended Complaint" conducted a search of his apartment, without a search warrant, in violation of his Fourth Amendment rights. After learning that "none of the members of the City of Stamford Police Department were present at the scene during the alleged search," however, Plaintiff sought, and this Court granted, dismissal of Plaintiff's claims as to the five Stamford defendants (Docket Entry No. 85)—leaving only the three County Defendants.

The County Defendants argue that it is "entirely unclear: (1) which, if any, of the County Defendants, actually entered the apartment; (2) what their role was in the search; and (3) which, if any, of the County Defendants, left the door unlocked after the search." (County Def. Memo. at 7.) However, Plaintiff's Amended Complaint alleges clearly that "the officers in the Amended Complaint"—<u>i.e.</u>, after the dismissal of the Stamford police officers, the three County Defendants—"entered" Plaintiff's apartment "without a search warrant" and "assisted the previously named agents and officers in the illegal search." (Am. Compl. at 4.) This allegation

is a sufficient proffer that the County Defendants entered Plaintiff's apartment and participated in the allegedly unlawful search.[12]  The Court therefore denies the County Defendants' motion to the extent it is premised on failure to allege their personal involvement in the allegedly unconstitutional acts.

*Qualified Immunity*

The County Defendants next argue that they are entitled to qualified immunity because "Plaintiff is unable to articulate what constitutional right was violated by any of the Individual County Defendants," and, by consequence, "cannot establish" that the conduct of the County Defendants "was not 'objectionably reasonable.'"  (County Def. Memo. at 8-9.)

As explained above, Plaintiff has sufficiently alleged that the County Defendants participated in a violation of his clearly established Fourth Amendment right not to be subject to a warrantless search of his home.  Also as discussed above, Plaintiff has alleged facts sufficient to create a plausible inference that Defendants' conduct in engaging in that search was not "objectively reasonable."  The Court therefore denies the County Defendants' motion to the extent it raises the defense of qualified immunity, without prejudice to litigation of the qualified immunity issue on a more developed record.  See Lora v. City of New York, No. 14-CV-8121 (VEC), 2016 WL 4074433, at *9 n.8 (S.D.N.Y. July 29, 2016) (quoting Krebs v. Tutelian, No. 97-CIV-554 (MBM), 1998 WL 108003, at *5 (S.D.N.Y. Mar. 12, 1998)) ("[T]he same principles of qualified immunity apply in section 1983 actions against state officials and Bivens actions against federal officials.").

---

[12]    Plaintiff fails to allege which Defendant allegedly left his apartment door unlocked at the conclusion of the search.  In light of the Court's dismissal of Plaintiff's separate claims arising out of Defendants' alleged failure to secure his apartment, however, the Court does not reach the question whether that failure to identify a specific defendant would serve as an independent basis for dismissal of those claims.

*State Law Claims*

Lastly, the County Defendants argue that Plaintiff's state law claims against them must be dismissed because "Plaintiff has failed to affirmatively plead that he filed a notice of claim against any of the County Defendants, as required when bringing a tort claim against a municipality or against any of its officers, agents or employees." (County Def. Memo. at 9-10.)

Pursuant to section 50-e of the New York General Municipal Law, filing a notice of claim within 90 days of the date the claim arises is a mandatory prerequisite to bringing a tort claim against a public corporation, or any of its officers, appointees, or employees, if the public corporation has a statutory obligation to indemnify such person(s). See Brown v. Metro. Transp. Auth., 717 F. Supp. 257, 259 (S.D.N.Y. 1989); N.Y. Gen. Mun. Law § 50-e(1)(b) (McKinney). Absent a plaintiff's allegation that he filed a timely notice of claim, such state law claims must be dismissed for failure to state a cause of action. Brown, 717 F. Supp. at 259. Further, a request for an extension of this time limit must be filed in the "supreme court or to the county court," without exception. N.Y. Gen. Mun. Law § 50-e(7) (McKinney). District courts lack jurisdiction over an application to toll a claim that is barred by section 50-e. See Brown, 717 F. Supp. at 260-61.

Each of the County Defendants is an officer of Westchester County, a public corporation for purposes of section 50-e. There is no allegation that the County Defendants were acting outside the scope of their employment when they searched Plaintiff's apartment, such that they would not be entitled to indemnification by the County and (therefore) the procedural protections of section 50-e. See Dilworth v. Goldberg, No. 10-CV-2224 (RJH), 2011 WL 4526555, at *7 (S.D.N.Y. Sept. 30, 2011) ("Service of a notice of claim is a condition precedent to the commencement of an action against a county employee whenever the county is required to

indemnify the employee.") (dismissing claims against Westchester County employees for failure to serve a timely notice of claim under section 50-e); Costabile v. Cty. of Westchester, New York, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007) (quoting Grasso v. Schenectady County Pub. Library, 30 A.D.3d 814, 818, 817 N.Y.S.2d 186, 190 (3d Dep't 2006)) ("The County's duty to indemnify [its] employees turns on whether they were acting within the scope of their employment[.]"); Cortlandt v. Westchester Cty., No. 07-CV-1783 (MDF), 2007 WL 3238674, at *7 (S.D.N.Y. Oct. 31, 2007) (dismissing state law claims, and denying motion for leave to amend the complaint as to those claims, where plaintiff failed to serve a notice of claim as to the employees of Westchester County and other entities, and where plaintiff's "proposed amended complaint does not allege any conduct outside the scope of the individual defendants' scope of employment").

Because Plaintiff does not allege that he filed a timely notice of claim against any of the County Defendants, his state law claims against them are dismissed, without prejudice to Plaintiff seeking leave to amend to assert those claims if he has in fact filed one or more timely notices of claim as to the County Defendants.

CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss the Complaint (Docket Entry No. 58) is granted to the extent that the Court dismisses all of Plaintiff's claims against agent Dellapia, as well as Plaintiff's common law claims against agents Dellapia and Gjelaj, and is otherwise denied.

The County Defendants' motion to dismiss the Amended Complaint (Docket Entry No. 68) is granted to the extent that the Court dismisses Plaintiff's state law claims against the County Defendants, without prejudice to Plaintiff seeking leave to amend the complaint to

allege that he timely filed one or more notices of claim as to those defendants, and is otherwise

denied.

        If Plaintiff wishes to amend his pleadings, to allege that he has exhausted his

administrative remedies under the FTCA (in support of a claim against the United States) or that

he has timely filed one or more notices of claim (in support of his state law claims against the

County Defendants), or to allege both, he must file a motion to amend his complaint, attaching a

proposed amended complaint, by **November 30, 2020**.  Plaintiff is warned that, if accepted, any

proposed amended complaint will completely replace (not supplement) any prior complaint, and

it must therefore include all relevant factual allegations against each remaining defendant (i.e.,

agent Gjelaj, as well as Christopher Kelly, Erin Moore, and Mark Carey of the Westchester

County police department).

        This case remains referred to the Honorable Gabriel W. Gorenstein, United States

Magistrate Judge, for general pretrial management.  The parties shall promptly report to Judge

Gorenstein as required by the Court's Order dated December 13, 2019.  (Docket Entry No. 73.)[13]

        This Memorandum Opinion and Order resolves Docket Entry Nos. 58 and 68.

The Clerk of Court is directed to (1) terminate agent Jeremy Dellapia as a defendant in this

action, and (2) mail Plaintiff a copy of this Memorandum Opinion and Order, together with a

form Amended Complaint.

        SO ORDERED.

Dated: New York, New York
      November 3, 2020

                                 /s/ Laura Taylor Swain
                               LAURA TAYLOR SWAIN
                               United States District Judge

---

[13]     In their report, the parties shall update the Court regarding the status of service of process on defendant Eman Grant.

**Copy to be mailed to:**

Wilbert K.A. Turner
Reg. No. 25352-083
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007